**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
IN RE: DDAVP INDIRECT PURCHASER      :      No. 05 Civ. 2237 (CS)
ANTITRUST LITIGATION                  :
_____:      HON. CATHY SEIBEL, U.S.D.J.
                                      :
THIS DOCUMENT RELATES TO:             :
                                      :
ALL ACTIONS                           :
------------------------------------------------------------x
```

### MEMORANDUM OF LAW IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' UNOPPOSED MOTION FOR <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... iii

I.  INTRODUCTION ........................................................................................................... 1

II.  BACKGROUND .............................................................................................................. 2

   A.  PLAINTIFFS' CLAIM ............................................................................................. 2

   B.  DEFENDANTS' PRIOR LITIGATION WITH BARR LABORATORIES ............................... 4

   C.  THE CURRENT INDIRECT PURCHASER SUIT .......................................................... 5

   D.  NEGOTIATION AND THE PROPOSED SETTLEMENT ................................................. 7

III.  ARGUMENT ................................................................................................................... 8

   A.  THE CLASS SHOULD BE CERTIFIED PURSUANT TO RULE 23 ................................... 8

      1.  THIS CLASS SATISFIES THE PREREQUISITES OF RULE 23(A) ...................... 10

         A.  JOINDER IS IMPRACTICABLE FOR THE SETTLEMENT CLASS ........................ 10

         B.  THERE ARE COMMON QUESTIONS OF LAW AND FACT ....................... 12

         C.  THE CLASS REPRESENTATIVES' CLAIMS ARE TYPICAL OF THOSE IN the SETTLEMENT CLASS ............................................................. 14

         D.  NAMED PLAINTIFFS AND CLASS COUNSEL WILL FAIRLY AND ADEQUATELY PROTECT the INTEREST OF THE CLASS ............................... 15

            I.  THERE IS AN ABSENCE OF CONFLICT ....................................... 16

            II.  COUNSEL IS QUALIFIED ......................................................... 16

      2.  THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ........................... 17

         A.  COMMON LEGAL AND FACTUAL QUESTIONS PREDOMINATE .............. 17

         B.  A CLASS ACTION IS SUPERIOR TO OTHER METHODS OF ADJUDICATION ......................................................................... 21

   B.  THE COURT SHOULD APPOINT CLASS COUNSEL .................................................... 22

   C.  THE PROPOSED SETTLEMENT EXCEEDS THE STANDARD FOR PRELIMINARY APPROVAL ......................................................................................................... 22

i

1.      THE PROPOSED SETTLEMENT IS THE PRODUCT OF SERIOUS, INFORMED, ARM'S-LENGTH NEGOTIATIONS ............................................. 24

2.      THE PROPONENTS OF THE SETTLEMENT ARE HIGHLY EXPERIENCED IN HATCH-WAXMAN ANTITRUST LITIGATION ........................................... 25

3.      THERE WAS MORE THAN SUFFICIENT DISCOVERY AND INVESTIGATION FOR CLASS COUNSEL TO MAKE AN INFORMED DECISION ................................................................................................... 26

4.      THE PROPOSED SETTLEMENT IS WITHIN THE RANGE OF POSSIBLE APPROVAL ................................................................................................ 26

D.      APPROVAL OF THE PROPOSED FORM AND MANNER OF NOTICE AND THE PROPOSED FINAL SETTLEMENT SCHEDULE LEADING UP TO THE FAIRNESS HEARING IS APPROPRIATE ..................................................................... 27

IV.      CONCLUSION ............................................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bennett v. Behring Corp.*,
  96 F.R.D. 343 (S.D. Fla. 1982) ..............................................................................30

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
  504 F.3d 229 (2d Cir. 2007) ............................................................................14, 20

*Cordes & Co. Inc. v. A.G. Edwards & Sons, Inc.*
  502 F.3d 91 (2d Cir. 2007) ................................................................18, 19, 20, 21

*Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*,
  375 F.2d 648 (4th Cir. 1967) .................................................................................11

*Damassia v. Duane Reade, Inc*.,
  250 F.R.D. 152 (S.D.N.Y. 2008) ...........................................................................12

*Daniels v. City of New York*,
  198 F.R.D. 409 (S.D.N.Y. 2001) ...........................................................................12

*Ferring B.V. v. Barr Labs., Inc.*,
  No. 7:02-CV-9851 CLB MDF, 2005 WL 437981 (S.D.N.Y. Feb 7, 2005), *aff'd*, 437
  F.3d 1181 (Fed. Cir. 2006) .......................................................................................4

*Ferring v. Barr Labs., Inc.*,
  437 F.3d 1181 (Fed. Cir. 2006) ............................................................................4, 5

*Fisher Bros., Inc. v. Mueller Brass Co.*,
  630 F. Supp. 493 (E.D. Pa. 1985) ..........................................................................26

*Gates v. Dalton*,
  67 F.R.D. 621 (E.D.N.Y. 1975) ..............................................................................16

*Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*,
  424 F.3d 363 (3d Cir. 2005) ...................................................................................19

*In re Alstom SA Sec. Litig.*,
  253 F.R.D. 266 (S.D.N.Y. 2008) ...........................................................................14

*In re Automotive Refinishing Paint Antitrust Litig.*,
  MDL No. 1426, 2004 WL 1068807 (E.D.Pa. May 11, 2004) .................................23

*In re Baldwin-United Corp.*,
   105 F.R.D. 475 (S.D.N.Y. 1984) ............................................................8

*In re Buspirone Patent Antitrust Litig.*,
   210 F.R.D. 43 (S.D.N.Y. 2002) ................................................... passim

*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 297 (E.D. Mich. 2001) .........................................................20

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) .........................................................10

*In re Currency Conversion Fee Antitrust Litig.*,
   264 F.R.D. 100 (S.D.N.Y. 2010) ......................................................8, 21

*In re DDAVP Direct Purchaser Antitrust Litig.*,
   585 F.3d 677 (2d Cir. 2009), *cert. denied,* 130 S. Ct. 3505 (Jun. 28, 2010) ............................6

*In re Elan Sec. Litig.*,
   385 F. Supp. 2d 363 (S.D.N.Y. 2005).....................................................24

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
   256 F.R.D. 82 (D. Conn. 2009).............................................................9

*In re Flonase Antitrust Litig.*,
   284 F.R.D. 207 (E.D. Pa. 2012)............................................................21

*In re Fresh Del Monte Pineapples Antitrust Litig.*,
   No. 1:04-md-1628 (RMB), 2008 WL 5661873 (S.D.N.Y. Feb. 20, 2008) ......................15, 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)................................................................23

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................23

*In re Healthsouth Corp. Secs. Litig.*,
   334 Fed. Appx. 248 (11th Cir. 2009)......................................................8

*In re Initial Pub. Offering Secs. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. 2009) ................................................. passim

*In re Initial Pub. Offerings Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006)................................................................9

*In re Initial Public Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ...................................................22, 23, 24

*In re Linerboard Antitrust Litig.*,
   321 F. Supp. 2d 619 (E.D. Pa. 2004) ............................................................26

*In re Livent Inc. Noteholders Sec. Litig.*,
   210 F.R.D. 512 (S.D.N.Y. 2002) ...............................................................11, 16, 17

*In re Lupron Mrktg. and Sales Practices Litig.*,
   228 F.R.D. 75, 87-92 (D. Mass. 2005) ....................................................10

*In re NASDAQ Market-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................14

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .........................................................23, 26

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ...........................................................24

*In re Neurontin Antitrust Litig.*,
   Master File 02-1390, 2011 WL 286118 (D.N.J. Jan. 25, 2011) .............................20

*In re Nifedipine Antitrust Litig.*,
   246 F.R.D. 365 (D.D.C. 2007)............................................................11, 20

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ...........................................................28

*In re Playmobil Antitrust Litig.*,
   35 F. Supp. 2d 231 (E.D.N.Y. 1998) ......................................................15

*In re Relafen Antitrust Litig.*,
   218 F.R.D. 337 (D. Mass. 2003).........................................................10, 20

*In re Remeron End-Payor Antitrust Litig.*,
   Civ. 04-5126 FSH, 2005 WL 2230314 (D.N.J. 2005) .......................................8, 10

*In re Sony Corp. SXRD Rear Projection Television Mrktg., Sales Prac. and Prods. Liab.
   Litig.*,
   No. 09-MD-2102, 2010 WL 1993817 (S.D.N.Y. May 19, 2010) ...........................29

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   No. 99 Civ. 0962 (RCC), 2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) ....................14

*In re Sumitomo Copper Litig.*,
   182 F.R.D. 85 (S.D.N.Y. 1998) ...........................................................14

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008).....................................................25

*In re Terazosin Hydrochloride Antitrust Litig.*,
  220 F.R.D. 672, 687-88 (S.D. Fla. 2004) ............................................................15

*In re Tricor Direct Purchaser Antitrust Litig.*,
  252 F.R.D. 213 (D. Del. 2008) ...........................................................................20

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003) .................................................................27

*In re Warfarin Sodium Antitrust Litig.*,
  212 F.R.D. 231, 246-52 (D. Del. 2002) ........................................................10, 28

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ...........................................................................18, 28

*In re Wellbutrin SR Direct Purchaser Antitrust Litig.*,
  04-CV-5525, 2008 WL 1946848 (E.D. Pa. May 2, 2008) ....................................20

*Jennings Oil Co. v. Mobil Oil Co.*,
  80 F.R.D. 124 (S.D.N.Y. 1978) ............................................................................12

*Meijer, Inc. v. Abbott Labs.*,
  No. C 07-5985 CW, 2008 WL 4065839 (N.D. Cal. Aug. 27, 2008) ......................18

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ................................................................................17

*Nichols v. Smithkline Beecham Corp.*,
  No. Civ.A.00-6222, 2005 WL 950616 (E.D. Pa. Apr. 22, 2005) ("*Paxil*") ...........10

*Paper Sys., Inc. v. Nippon Paper Indus.*,
  281 F.3d 629 (7th Cir. 2002) ................................................................................19

*Paxton v. Union Nat'l Bank*,
  688 F.2d 552 (8th Cir. 1982) ................................................................................11

*Poddar v. State Bank of India*,
  235 F.R.D. 592 (S.D.N.Y. 2006) ..........................................................................14

*Rannis v. Recchia*,
  380 Fed. Appx. 646 (9th Cir. 2010) ......................................................................11

*Robertson v. National Basketball Assoc.*,
  389 F. Supp. 867 (S.D.N.Y. 1975) ........................................................................16

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993) ..................................................................................11

*Sims v. Bank of Am. Corp.*,
   No. 06-CV-5991 (CPS)(JMA), 2008 WL 479988 (E.D.N.Y. Feb. 19, 2008) ..................11, 16

*Teva Pharms. USA, Inc. v. Abbott Labs.*,
   252 F.R.D. 213 (D. Del. 2008) ..........................................................................................21

*Thompson v. Linvatec Corp.*,
   No. 6:06-CV-0404 (NPM/GJD), 2007 WL 1526418 (N.D.N.Y. May 22, 2007).....................9

*Toure v. Cent. Parking Sys.*,
   No. 05 Civ. 5237 (WHP), 2007 WL 2872455 (S.D.N.Y. Sep. 28, 2007) .............................12

*Town of New Castle v. Yonkers Contracting Co., Inc.*,
   131 F.R.D. 38 (S.D.N.Y. 1990) .....................................................................................11, 12

*Twigg v. Sears, Roebuck & Co.*,
   153 F.3d 1222 (11th Cir. 1998) .........................................................................................30

*Vista Healthplan, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*,
   246 F.R.D. 349 (D.D.C. 2007) ("*Ovcon*") .........................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011) ...........................................................................................9, 10, 12

*Wal-Mart Stores Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)...................................................................................... passim

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)....................................................................................................8

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*,
   758 F.2d 86 (3d Cir. 1985)..................................................................................................29

## OTHER AUTHORITIES

6 Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS, § 18:25 & n.4 (4th ed.
   2002) ...................................................................................................................................18

1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 3.13 (4th ed. 2002) ........14

1 Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 3:10 (4th ed. 2002).............12

6 Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 18:5 & n.9 (4th ed.
   2002) ...................................................................................................................................13

Fed. R. Civ. P. 23 *et seq.*......................................................................................... passim

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 ........................................................22, 23

## I.    <u>INTRODUCTION</u>

Indirect Purchaser Plaintiffs Vista Healthplan, Inc. ("Vista"), n/k/a Coventry Health Care of Florida, Inc., Pennsylvania Employees Benefit Trust Fund ("PEBTF"), Painters District Council No. 30 Health and Welfare Fund ("Painters Fund"), Philadelphia Federation of Teachers Health and Welfare Fund ("PFT Fund"), and Ronald L. Seamon, as Executor of the Will of Helen Ann Seamon (collectively, "Indirect Purchaser Plaintiffs," "Named Plaintiffs" or "Plaintiffs"), by and through Interim Co-Lead Counsel, respectfully submit this Memorandum of Law in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion").

Plaintiffs and Defendants Aventis Pharmaceuticals, Inc. ("Aventis"), Ferring B.V., and Ferring Pharmaceuticals, Inc. ("Ferring") (collectively, "Defendants"), have entered into a proposed settlement providing for the payment of $4.75 million in total ($3.95 million from Ferring and $800,000 from Aventis) to Plaintiffs and members of the Indirect Purchaser Class (as defined herein), in exchange for dismissal of this litigation with prejudice and certain releases from the Indirect Purchaser Plaintiffs and the Class, as fully set forth in the Settlement Agreement. The terms of the Settlement are set forth in the Settlement Agreement dated February 26, 2013 ("Settlement Agreement"), which is attached as Exhibit F to the Declaration of Kevin B. Love, dated March 5, 2013 ("Love Decl.").

Plaintiffs respectfully submit that preliminary approval of the Settlement is appropriate. After years of litigation and intensive arm's-length negotiations, Plaintiffs, on behalf of the Class and subject to the Court's approval, agreed to settle their claims against Defendants. This litigation included document discovery, motion practice in the district court, and a successful appeal to the Court of Appeals overturning the district court's prior dismissal of this action. Plaintiffs' efforts in exploring the legal and factual bases for this case have served to inform

1

Plaintiffs regarding the merits and risks of their claims. The Settlement is the result of good faith, arm's-length negotiations over an extended period of time among experienced counsel for Plaintiffs and Defendants. Moreover, the Settlement assures Plaintiffs and the Indirect Purchaser Class a substantial benefit, while avoiding the uncertainties and delays of continued litigation in this complex case. For these reasons, which are set forth more fully below, the Settlement meets the test for preliminary approval in that it is fair, reasonable, and adequate.

Plaintiffs therefore request that the Court enter an Order, substantially in the form of the proposed Preliminary Approval Order (attached to the Motion as Exhibit 1), which if entered, would: (1) preliminarily certify the Class as proposed in the Settlement Agreement; (2) appoint the Named Plaintiffs as representatives of the Class; (3) appoint Criden & Love, P.A., Cafferty Clobes Meriwether & Sprengel, LLP, Spector Roseman Kodroff & Willis, P.C., and Kessler Topaz Meltzer & Check as Co-Lead Class Counsel; (4) grant preliminary approval of the proposed Settlement; (5) approve the proposed form and method of giving notice ("Notice") to the class of the Settlement; (6) appoint the Class Administrators; and (7) schedule a fairness hearing during which the Court will consider, among other things: (a) the parties' request for final approval of the Settlement, the Plan of Allocation, and entry of the proposed Final Order and Judgment; (b) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses and service awards to the Named Plaintiffs; (c) dismissal of this action; and (d) any other matters properly before the Court. This motion is unopposed.

## II.     BACKGROUND

### A.     PLAINTIFFS' CLAIM

This is an antitrust class action brought by Plaintiffs on behalf of a proposed class of indirect purchasers of the prescription pharmaceutical tablet DDAVP and its generic equivalent, desmopressin acetate. Plaintiffs assert claims for monopolization against the Defendants under

the antitrust and consumer protection statutes of the Indirect Purchaser States, as well as claims for unjust enrichment.

The Class is defined in the Settlement Agreement for purposes of Settlement as:

> All persons and entities in the United States who purchased and/or paid for DDAVP or generic versions of DDAVP in tablet form for consumption by themselves, their families, or their members, employees, insureds, participants or beneficiaries during the period from February 18, 2001 through December 31, 2010 (the "Class Period"). For purposes of the Class definition, persons and entities "purchased" DDAVP or generic versions of DDAVP if they paid some or all of the purchase price. Excluded from the Class are Defendants, their parents, employees, subsidiaries and affiliates, and federal government entities (except government funded employee benefit plans).

Plaintiffs allege in their Amended Consolidated Class Action Complaint, filed July 26, 2011 ("Complaint"), that Defendants engaged in various acts and practices as part of an overall plan to improperly maintain and extend Defendants' monopoly power in the market for DDAVP (desmopressin acetate) tablets. Defendants' alleged plan to monopolize consisted of, *inter alia*: (1) procuring U.S. Patent No. 5,407,398 ("'398 patent") through inequitable conduct and/or fraud on the Patent and Trademark Office ("PTO"); (2) improperly listing the '398 patent in the FDA publication known as the Orange Book; (3) filing sham patent litigation against competitors developing generic versions of DDAVP; and (4) filing a sham citizen petition to further delay FDA approval of generic DDAVP, all of which were acts that were part of a course of conduct to prevent timely competition in the market for DDAVP tablets from generic drug manufacturers. Plaintiffs allege further that Defendants' conduct delayed the market entry of less expensive generic versions of DDAVP, thereby forcing the Indirect Purchaser Class to pay artificially inflated prices for DDAVP and desmopressin acetate in tablet form, resulting in overcharges to Plaintiffs and the Indirect Purchaser Class.

Defendants have denied Plaintiffs' allegations and have asserted several defenses. Defendants argue, *inter alia,* that their conduct was at all times lawful, was in furtherance of their business interests, was legitimate petitioning activity subject to immunity from the antitrust laws, and caused no unlawful effects on competition, the public, or the Indirect Purchaser Class.

## B. DEFENDANTS' PRIOR LITIGATION WITH BARR LABORATORIES

In prior litigation, Ferring and Aventis attempted to enforce the '398 patent against Barr Laboratories, Inc., ("Barr") a prospective manufacturer of a generic form of DDAVP tablets (the "Barr Action"). The district court granted Barr's motion for summary judgment, finding that Ferring had committed inequitable conduct by deliberately deceiving the PTO with respect to the application for the '398 patent. *Ferring B.V. v. Barr Labs., Inc.,* No. 7:02-CV-9851 CLB MDF, 2005 WL 437981, at *10 (S.D.N.Y. Feb 7, 2005), *aff'd,* 437 F.3d 1181 (Fed. Cir. 2006). Ferring appealed that decision to the Court of Appeals for the Federal Circuit.

While the Barr Action was entering its summary judgment phase, Ferring (in consultation with Aventis) filed a citizen petition with the FDA on February 2, 2004, suggesting that Barr be required to conduct additional tests to establish that its product was bioequivalent to DDAVP and/or to establish that Barr's generic tablet had the same safety and efficacy profile as DDAVP when used in children (one of the intended populations for the drug). After the district court's summary judgment opinion in the Barr Action, Barr submitted a response to Ferring citizen's petition. Barr's response noted that Aventis had sponsored research that was unfavorable to the positions advanced by Ferring in its citizen petition. The FDA denied the citizen petition, and in so doing, specifically noted Ferring's failure to include this unfavorable information from the Aventis research in its citizen petition.

On February 15, 2006, the Federal Circuit affirmed the district court's grant of summary judgment in Barr's favor, holding that Ferring had failed to disclose material information and

that such omission was made with the intent to deceive.  *See Ferring B.V. v. Barr Labs., Inc.,* 437 F.3d at 1194.

## C.    THE CURRENT INDIRECT PURCHASER SUIT

In February 2005, while the appeal in the Barr Action was pending, the first of the Indirect Purchaser Plaintiffs' Complaints were filed, alleging that Defendants had violated federal antitrust law by engaging in an unlawful scheme that included: (1) procuring the '398 patent through inequitable conduct and/or fraud on the Patent and Trademark Office ("PTO"); (2) improperly listing the '398 patent in the FDA publication known as the Orange Book; and (3) filing sham patent litigation against competitor Barr Laboratories, which had developed a generic version of the tablet form of DDAVP.

In April 2005, the Court directed Defendants to produce all documents and materials from the Barr Action, as well as materials from a second patent infringement action Ferring had commenced against another generic pharmaceutical manufacturer Teva Pharmaceuticals, *Ferring B.V. v. Teva Pharmaceuticals USA, Inc., et al.*, No. 04-Civ-0884 (SLR).[1]  In compliance with this order, Defendants produced pleadings, hearing transcripts, discovery materials (including deposition transcripts), and expert reports from the patent cases.  Defendants also produced transactional data reflecting sales of DDAVP tablets.

In February 2006, the Federal Circuit issued its opinion in the Barr Action, holding that Ferring had omitted "highly material" information during the prosecution of the '398 patent, affirming Judge Brieant's prior summary judgment opinion. Indirect Purchaser Plaintiffs filed

---

[1] By Order of this Court dated April 15, 2005, Defendants were instructed to produce discovery material from the underlying patent litigation, and certain economic data excerpted from Plaintiffs' document requests.  Plaintiffs were also permitted to serve one set of document requests in the fall of 2005.  All other discovery related to Plaintiffs' claims was stayed.

their Consolidated Amended Class Action Complaint on April 5, 2006, adding a fourth theory of monopolization: that the citizen petition lodged against Barr was a sham.

Defendants moved to dismiss the Complaint on the basis that Plaintiffs, as purchasers of DDAVP (and not Defendants' competitors) lacked antitrust standing to sue for Defendants' alleged fraud on the PTO, that the Plaintiffs' state-law claims were preempted, and that wrongdoing by Aventis was not sufficiently alleged. On November 2, 2006, the then-presiding judge dismissed the Complaint, holding that Plaintiffs had pleaded insufficient facts to sustain a monopolization claim, that Plaintiffs lacked antitrust standing to assert a *Walker-Process* theory, and that Plaintiffs failed to allege sufficient facts *vis-à-vis* Aventis to satisfy the requirements of Rule 9(b).

Plaintiffs timely appealed, and on October 16, 2009, the Second Circuit reversed and remanded the dismissal in its entirety, concluding: (1) that Plaintiffs in fact had standing to assert a *Walker-Process* theory; (2) that Plaintiffs' allegations of fraud on the PTO, improper listing in the FDA Orange Book, sham litigation, and sham petitioning were all adequately pled; and (3) Plaintiffs had pled sufficient facts concerning Aventis's wrongdoing. *In re DDAVP Direct Purchaser Antitrust Litigation*, 585 F.3d 677, 691, 694 (2d Cir. 2009), *cert. denied,* 130 S. Ct. 3505 (Jun. 28, 2010).

While the Direct Purchaser Plaintiffs settled soon after the appeal process ended, the Indirect Purchaser Plaintiffs were forced to move to vacate the Amended Judgment. Plaintiffs then filed an Amended Consolidated Class Action Complaint on July 26, 2011. On November 9, 2011, the parties filed all of the pleadings associated with Defendants' Joint Motion to Dismiss the newly-filed Complaint, which again raised the federal preemption argument. On October 17, 2012, the Court entered an Order granting in part and denying in part Defendants' Joint Motion

to Dismiss. While Plaintiffs' claim for injunctive relief was dismissed (Count I), most of Plaintiffs' state-law claims (Counts II and III) survived the motion. After the Order was handed down, the parties engaged in settlement discussions. After many months of arm's-length negotiations, the parties finally agreed to settle this matter, resulting in the execution of the Settlement Agreement dated February 26, 2013.

Although in some respects this action remains in its early stages despite its age, Indirect Purchaser Plaintiffs have reviewed documents produced from the patent litigation, received data reflecting DDAVP sales from Defendants and other sources, retained an expert to prepare a damages analysis, briefed two motions to dismiss, reviewed the arguments made on appeal, and have otherwise analyzed the merits of the claims. Plaintiffs, and their counsel, are therefore able to assess the merits of the current action.

**D.**   **NEGOTIATION AND THE PROPOSED SETTLEMENT**

The Settlement Agreement was reached after extensive arm's-length negotiations among highly experienced counsel.

Counsel for Indirect Purchaser Plaintiffs have examined the legal bases for their action by, among other things, reviewing the Orders entered by this Court and the Second Circuit, by briefing two Motions to Dismiss, and have reviewed thousands of pages of documents produced in the Barr Action, including documents, pleadings, and deposition transcripts. Plaintiffs also closely analyzed the record in the Barr Action and could therefore anticipate the arguments Defendants were likely to raise in response to Plaintiffs' argument that the Barr Action was not entitled to antitrust immunity. Plaintiffs had also researched the record concerning Defendants' citizen petition to the FDA.

As to injury and damages, Plaintiffs' counsel have participated in numerous, similar antitrust class actions relating to claims for overcharges arising from wrongfully delayed generic

competition, and so have been able to evaluate the potential damages in the event Plaintiffs were able to prevail on all claims. In sum, Plaintiffs were able to evaluate the strengths and weaknesses of their position, and the fairness of the proposed Settlement.

The Settlement provides for a total cash payment of $4.75 million to Plaintiffs and the Class in exchange for dismissal of the litigation with prejudice and release of all claims that Plaintiffs have asserted or could have asserted in the Indirect Purchaser Class Action relating to the sale of DDAVP tablets by Defendants to Class members.[2] The Settlement Agreement provides that, at or before the final approval hearing, Class Counsel will propose to the Court a Plan of Allocation which shall provide for the manner of allocation of the Settlement Fund among all authorized claimants.

## III. ARGUMENT

### A. THE CLASS SHOULD BE CERTIFIED PURSUANT TO RULE 23[3]

The Second Circuit has long acknowledged the propriety of certifying a class solely for the purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Baldwin-United Corp.*, 105 F.R.D. 475, 478 (S.D.N.Y. 1984). A court may grant certification where, as here, the proposed class satisfies the four requirements of Rule 23(a) and the requirements of Rule 23(b). *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 110 (S.D.N.Y. 2010).

---

[2] The Settlement also references a side-letter agreement between Plaintiffs and Defendants, granting one or both Defendants the opportunity to withdraw from the proposed Settlement if a certain number of Class members opt out of the Class and proposed Settlement. The terms that would trigger Defendants' right to withdraw are being kept confidential. Such provisions are "typically not disclosed and . . . kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out." *In re HealthSouth Corp. Secs. Litig.*, 334 Fed. Appx. 248, 250 n.4 (11th Cir. 2009); *In re Remeron End-Payor Antitrust Litig.*, Civ. 04-5126 FSH, 2005 WL 2230314, at *18 (D.N.J. 2005) ("information regarding conditions that may terminate a settlement need not be detailed in the notice to the Class"). The parties can provide the side-letter agreement for *in camera* inspection upon request of the Court.
[3] Defendants have agreed to the certification of the Settlement Class for settlement purposes only.

The Southern District of New York has recently evaluated the application of Rule 23 in the settlement context:

> The use of a settlement class allows the parties to concede, for purposes of settlement negotiations, the propriety of bringing the suit as a class action and allows the court to postpone formal certification of the class until after settlement negotiations have ended.…A settlement-only class must meet all the requirements of Rule 23, with one important exception: because the case will never go to trial, the court need not consider the manageability of the proceedings should the case or cases proceed to trial.

*In re Initial Pub. Offering Secs. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. 2009) ("*In re IPO III*") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997)).

Courts enjoy broad discretion when determining whether to certify a class. *Thompson v. Linvatec Corp.*, No. 6:06-CV-0404 (NPM/GJD), 2007 WL 1526418, at *4 (N.D.N.Y May 22, 2007) (citing *Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 179 (2d Cir. 1990)). On a motion for class certification, the party seeking certification must demonstrate that the requirements for certification have been met. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). In satisfying itself that the requirements of Rule 23 have been met, a court should only inquire as to the merits of the underlying claim for the limited purpose of making such a determination. *See In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41-42 (2d Cir. 2006) ("*In re IPO*"); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 85-86 (D. Conn. 2009) ("The [*In re IPO*] Court cautioned, however, that considering facts for purposes of determining whether the plaintiff had established all the Rule 23 requirements is not a license to delve into all merits issues, and that the district court should not assess 'any aspect of the merits unrelated to a Rule 23 requirement.'"). *Cf. Wal-Mart*, 131 S. Ct., at 2551-52 & n.6 (describing inquiry as limited to whether Rule 23 is met).

This Court, in determining whether to certify the proposed class of indirect purchasers of pharmaceuticals, does not work on a blank slate. Numerous courts, including courts in this

District, have certified indirect purchaser classes in over a dozen highly analogous antitrust cases involving similar (or the same) plaintiffs, similar proposed classes, and similar theories of liability and harm relating to overcharges arising from wrongfully delayed generic competition.[4]

## 1.     This Class Satisfies The Prerequisites Of Rule 23(a)

Class certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

### a.     Joinder Is Impracticable For The Settlement Class

Under Fed. R. Civ. P. 23(a)(1), class certification is appropriate where a class contains so many members that joinder of all would be impracticable.

Plaintiffs must demonstrate only that the proposed class is so numerous that joinder is impracticable; the rule does not require impossibility and does not require precise enumeration of class size.  "Impracticable does not mean impossible; joinder may merely be difficult or inconvenient, rendering a class action the most efficient method to resolve plaintiffs' claims".  *In re IPO III*, 260 F.R.D. at 90.  Precise quantification of class members is not necessary because

---

[4] *See, e.g., Vista Healthplan, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 349, 365 (D.D.C. 2007) ("*Ovcon*"); *In re Children's Ibuprofen Oral Suspension Antitrust Litig.*, No. 04-cv-535 (D.D.C. Jan. 6, 2006); *In re Remeron End-Payor Antitrust Litig.*, Civ. 04-5126 FSH, 2005 WL 2230314, at *12 (D.N.J. Sept. 13, 2005); *Nichols v. Smithkline Beecham Corp.*, No. Civ.A.00-6222, 2005 WL 950616, at *7 (E.D. Pa. Apr. 22, 2005) ("*Paxil*"); *In re Augmentin Antitrust Litig.*, 2005 U.S. Dist. LEXIS 33711 (E.D. Va. Jan. 10, 2005); *In re Lupron Mrktg. and Sales Practices Litig.,* 228 F.R.D. 75, 87-92 (D. Mass. 2005); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 67-71 (D. Mass. 2005); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003); and *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 246-52 (D. Del. 2002).

the court may make reasonable assumptions based on available facts to support a finding of numerosity. *In re Livent Inc. Noteholders Sec. Litig*., 210 F.R.D. 512, 515 (S.D.N.Y. 2002)*; Sims v. Bank of Am. Corp*., No. 06-CV-5991 (CPS)(JMA), 2008 WL 479988, at *6 (E.D.N.Y. Feb. 19, 2008).

"Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Hence, while forty class members presumptively satisfies Rule 23(a)(1), a class may contain fewer members. *Id.* at 935-36 ("a court may certify a class even if it is composed of as few as 14 members") (internal quotes and citation omitted).[5] "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, [and] the ability of claimants to institute individual suits" *Id.* at 936. The nature of the suit may also be considered. *See Town of New Castle v. Yonkers Contracting Co., Inc.,* 131 F.R.D. 38, 41 (S.D.N.Y. 1990).

Here, the Class consists of all persons and entities in the United States that purchased and/or paid for DDAVP or generic versions of DDAVP in tablet form from February 18, 2001 through December 31, 2010. Counsel for Plaintiffs have determined, based on the data available, that the Class consists of thousands, if not tens of thousands, of business entities and individuals located throughout the United States. Avoiding separate suits by these Class members favors a finding of impracticability of joinder.[6] Moreover, many of these Class members are individuals

---

[5] *See also Rannis v. Recchia*, 380 Fed. Appx. 646, 651-52 (9th Cir. 2010) ("class of 20"); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (citing with approval cases certifying classes of 16-20 members); *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 652 (4th Cir. 1967) (class of 18); *Ovcon*, 246 F.R.D. at 306 (D.D.C. 2007) (class of 30); *Town of New Castle*, 131 F.R.D. at 40 (class of 36).

[6] *Town of New Castle*, 131 F.R.D. at 41 ("While 25 is a small number . . . it is a large number when compared to a single unit. I see no necessity for encumbering the judicial process with 25 lawsuits, if one will do." (quoting *Philadelphia Electric Co. v. Anaconda Am. Brass Co*., 43 F.R.D. 452, 463 (E.D. Pa. 1968)).

who would lack the resources to bring complex, expensive antitrust suits on their own. Lastly, that "class action treatment of alleged antitrust violations is appropriate and desirable" further favors certification. *Town of New Castle*, 131 F.R.D. at 41.

**b.**       <u>There Are Common Questions Of Law And Fact</u>

Rule 23(a)(2) requires a showing that common issues of law or fact affect all Class members. Class members must suffer "the same injury." *Wal-Mart*, 131 S. Ct. at 2550. However, the commonality requirement under Rule 23(a)(2) does not mandate that all Class members make identical claims and arguments. *In re IPO III*, 260 F.R.D. at 91. When common questions do predominate, differences among the questions raised by individual members will not defeat commonality. *Id.*; *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001). Courts have commented that the test for commonality is not demanding. *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008); *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237 (WHP), 2007 WL 2872455, at *6 (S.D.N.Y. Sep. 28, 2007). This standard is easily met in cases involving anticompetitive conduct. As this Court observed, "monopolization claims are contingent upon a showing of monopoly power and an examination of the manner in which such power was acquired or maintained. . . . These issues, along with others, are questions that are undoubtedly common to all the members of the putative class." *Jennings Oil Co. v. Mobil Oil Co.*, 80 F.R.D. 124, 128 (S.D.N.Y. 1978) (citation omitted); *see also Buspirone*, 210 F.R.D. at 57 ("Numerous courts have held that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present important common questions sufficient to satisfy the commonality requirement of Rule 23(a)(2)."); *see generally* 1 Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 3:10 (4th ed. 2002) ("[i]n an antitrust action on behalf of purchasers who have brought the defendants' products at prices that have been maintained above competitive levels by unlawful conduct, the courts have held that the existence of an alleged

12

conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite"); 6 Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 18:5 & n.9 (4th ed. 2002) (monopoly allegations establish common question requirement).

Here, common issues of law and fact are abundant. Plaintiffs have alleged that Defendants engaged in an overarching plan to impede generic competition and thereby permit Defendants to maintain their monopoly power over desmopressin acetate tablets, which they sold under the brand name DDAVP. Plaintiffs allege that generic versions of DDAVP would have been significantly less expensive than the brand name version, and that the delay in generic competition allegedly caused by Defendants' wrongful conduct caused Plaintiffs and all indirect purchasers of DDAVP to suffer overcharges.

Common questions of law and fact include:

1.    whether Defendants had monopoly power;

2.    whether Defendants conspired and agreed to the scheme alleged in the Complaint;

3.    whether the '398 patent was obtained as a result of fraud committed upon the PTO;

4.    whether Defendants enforced the '398 patent although they knew that the patent was illegally obtained;

5.    whether Defendants improperly submitted the patents to the FDA for listing in the Orange Book;

6.    whether Defendants pursued sham litigation to enforce such allegedly fraudulent patents in an effort to prevent timely competition from generic drug-makers;

7.    whether Defendants filed a sham citizen petition with the FDA in a further effort to prevent timely competition from generic drug-makers;

8.    whether Defendants' activities as alleged have substantially affected interstate commerce; and

9.    whether, and to what extent, Defendants' conduct caused antitrust injury to the business or property of indirect purchasers.

Therefore, Rule 23(a)(2) is clearly satisfied.

### c. The Class Representatives' Claims Are
### Typical Of Those In The Settlement Class

Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re IPO III*, 260 F.R.D. at 91 (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007)); *see also In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 511 (S.D.N.Y. 1996) (citing *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992); 1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 3.13 (4th ed. 2002) (typicality requirement is established where the claims of the representative plaintiffs arise from the same course of conduct that gives rise to the claims of the other class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representatives).

The claims of the named representatives and absent class members need not be identical. Typicality simply requires that a class representative have an incentive to prove all the elements of the claim that an individual member of the class would have to prove. *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ. 0962 (RCC), 2006 WL 3498590, at *5 (S.D.N.Y. Dec. 4, 2006); *In re NASDAQ I*, 169 F.R.D. at 509. Nor will individualized damage issues defeat typicality. *See In re Alstom SA Sec. Litig.*, 253 F.R.D. 266, 276 (S.D.N.Y. 2008); *Poddar v. State Bank of India*, 235 F.R.D. 592, 595 (S.D.N.Y. 2006); *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 92 (S.D.N.Y. 1998).

The element of typicality is normally easy to establish in antitrust litigation. In the antitrust context, typicality is established when plaintiffs and all class members allege the same

antitrust violations by the defendants. *In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 1:04-md-1628 (RMB), 2008 WL 5661873, at *5 (S.D.N.Y. Feb 20, 2008) (holding, in a Section 2 case, that "[t]ypicality is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.") (quoting *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir. 1997)); *see also In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998).

Here, the Plaintiffs' claims rely on legal theories identical to those of the Class. Indeed, all Class members' claims arise out of Defendants' alleged core pattern of anti-competitive conduct that has similarly injured each member by artificially maintaining the supracompetitive price of desmopressin acetate tablets. The alleged delay in generic entry blocked all Class members from purchasing less expensive, generic versions of DDAVP, thereby causing Class members to suffer overcharges. The typicality element is therefore satisfied. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 687-88 (S.D. Fla. 2004) (holding that if one class representative is able to prove that Defendants' alleged anticompetitive acts caused an overcharge for the brand name drug, or that Defendants were unjustly enriched at Indirect Purchaser Plaintiffs' expense, such proof will likewise prove the case on liability for every other class member).

### d. Named Plaintiffs And Class Counsel Will Fairly And Adequately Protect The Interests Of The Class

Establishing the "adequate representation" element depends on two components: (1) the representative plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the litigation,[7] and (2) the plaintiffs' interests must not be antagonistic to those of the remainder

---

[7] This portion of the adequacy test is governed by Fed. R. Civ. P. 23(g), relating to "Class Counsel." As shown below, Class Counsel satisfy this test.

of the class. *See Sims*, 2008 WL 479988, at *8 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)); *In re Livent Inc. Noteholders*, 210 F.R.D. at 516. The adequacy requirement of Rule 23(a)(4) is clearly satisfied here.

### i.    There Is An Absence Of Conflict

This prong of the adequacy inquiry is "virtually the same" as the typicality inquiry because, under both requirements, "the interests of the named plaintiffs must be co-extensive with the interests of the proposed class members, and the plaintiffs' interests may not be antagonistic or adverse to interests of the class." *Robertson v. National Basketball Assoc.*, 389 F. Supp. 867, 898 (S.D.N.Y. 1975) (citation omitted). To defeat class certification, a conflict must be actual; mere speculation about the possibility of conflict will not defeat certification of a class. *See Gates v. Dalton*, 67 F.R.D. 621, 630 (E.D.N.Y. 1975). There are no actual or potential conflicts between the Class members and the representative Plaintiffs. Each Class member has the same interest in establishing Defendants' liability. The Plaintiffs allege that Defendants' anticompetitive conduct deprived each class member of the opportunity to substitute some or all of its DDAVP purchases with a lower-priced generic alternative and forced each to pay artificially inflated prices for this drug. By pursuing this litigation on their behalf, Plaintiffs will necessarily advance the common interests of the Class. *See, e.g.*, *Ovcon*, 246 F.R.D. at 304 ("Plaintiffs seek damages in the amount of alleged overcharges resulting from [defendants' violation] and because all direct purchasers are entitled to recover such overcharges, Plaintiffs and the absent class members 'have exactly the same interests in maximizing recovery of overcharge damages on each qualifying direct purchase or assigned claim.'").

### ii.    Counsel Is Qualified

To satisfy this prong, a plaintiff must demonstrate that class counsel is qualified, experienced, and generally able to conduct the proposed litigation. *In re Livent Inc. Noteholders*,

210 F.R.D. at 517 (citing *In re NASDAQ I*, 169 F.R.D. at 515). Plaintiffs' work before this Court is one indication of their ability to competently and zealously represent the Class. Moreover, the résumés of each firm, which can be found on each firm's website, demonstrate that proposed counsel for the Class are qualified.[8] Proposed Class Counsel have extensive experience and expertise in antitrust, class action, and complex civil litigation, and have successfully prosecuted antitrust class actions and other similar cases in courts in this District and throughout the United States. Indeed, the same Class Counsel here have been involved in prosecuting a number of substantively similar antitrust actions alleging the exclusion of generic competition in the prescription drug industry. Under Rule 23(g), therefore, Kevin B. Love and his firm Criden & Love, P.A., Patrick E. Cafferty and his firm Cafferty Clobes Meriwether & Sprengel, LLP, John Macoretta and his firm Spector Roseman Kodroff & Willis, P.C., and Joseph H. Meltzer and his firm Kessler Topaz Meltzer & Check, should be appointed Co-Lead Class counsel.

### 2. The Requirements Of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires the Court to "decide whether questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002). *See also In re Livent Inc. Noteholders*, 210 F.R.D. at 517.

### a. Common Legal And Factual Questions Predominate

"The predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole …

---

[8] Plaintiffs stand ready to submit to the Court each firm's paper résumé if the Court deems it necessary. More information about the proposed Co-Lead Counsel can be found on their respective firm websites: www.cridenlove.com, www.caffertyclobes.com, www.srkw-law.com, and www.ktmc.com.

predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.* 502 F.3d 91,107-08 (2d Cir. 2007) (internal quotes omitted). "It is 'a test readily met in certain cases alleging ... violations of the antitrust laws.'" *Cordes*, 502 F.3d at 108 (quoting *Amchem*, 521 U.S. at 625); *Buspirone*, 210 F.R.D. at 58.

Courts in this Circuit and others have routinely found that monopolization claims, such as those at issue here, involve predominantly common issues, and are thus well-suited for class treatment, because methodologies exist for demonstrating both widespread impact and damages, generally applicable to the class, by presenting evidence of anticompetitive conduct that artificially inflates prices. *See, e.g., In re Fresh Del Monte Pineapples*, 2008 WL 5661873, at *5 (certifying a class where "[w]ith respect to Rule 23(b)(3), '[p]roof of the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability is common to the claims of all the plaintiffs.'").[9] The "three required elements of an antitrust claim that Plaintiffs must demonstrate are provable by common evidence are (1) a violation of antitrust law; (2) injury and causation; and (3) damages." *Cordes*, 502 F.3d at 105. As to the first element, this Court has already held in a highly similar action that "[p]roof of the allegedly monopolistic and anti-competitive conduct at the core of the alleged liability is common to the claims of all the plaintiffs" who pled an overcharge theory. *Buspirone*, 210 F.R.D. at 57 (citing *Amchem Prods. v. Windsor*, 521 U.S. 591, 624 (U.S. 1997)). This is because the proof necessary to establish Defendants' wrongdoing

---

[9] *See also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) (Section 2 monopolization claim "naturally raise[d] several questions of law and fact common to the entire class and which predominate over any issues related to individual class members," including the unlawfulness of the defendant's conduct, the causal linkage between the defendant's conduct and the injury suffered by the class members, and the nature of the relief to which class members are entitled); *Meijer, Inc. v. Abbott Labs.*, No. C 07-5985 CW, 2008 WL 4065839, at *9 (N.D. Cal. Aug. 27, 2008) (granting class certification where the Court found "Plaintiffs intend to prove the fact of injury to the class by evidence that is predominantly generalized," rather than specific to each individual.); 6 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS, § 18:25 & n.4 (4th ed. 2002) ("common liability issues such as conspiracy or monopolization have, almost invariably, been held to predominate over individual issues") (citations omitted).

– their conduct before the PTO, FDA, and the courts – will not vary class member by class member. *Cf. Cordes*, 502 F.3d at 105 (in price-fixing case, "allegations of the existence of a price-fixing conspiracy are susceptible to common proof and, if proven true, would satisfy the first element of the plaintiffs' antitrust cause of action.").

Likewise, with respect to proving the fact of antitrust injury (or impact), Plaintiffs would advance proof common to the entire class. Antitrust injury "poses two distinct questions," one legal and one factual. *Cordes*, 502 F.3d at 106. The legal question is "whether any such injury is 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Here, as in *Cordes*, "[t]here is only one type of injury alleged in the Complaint – overcharges paid" by purchasers as the result of an antitrust violation. *Cf.* 502 F.3d at 107. Thus, "the legal question raised by the antitrust injury element is common to the class." *Id.* at 108.

The second question respecting antitrust injury is "the familiar factual question" of "whether injury-in-fact is susceptible to common proof in this case." *Id*. at 106. "If [a] single formula can be employed to make a valid comparison between the but-for fee and the actual fee paid, then … the injury-in-fact question is common to the class." *Id.* at 107. Plaintiffs here are seeking their overcharges – the difference between the price that was actually charged and the price that would have been charged had the anticompetitive conduct not occurred. *See*, *e.g.*, *Paper Sys., Inc. v. Nippon Paper Indus.*, 281 F.3d 629, 633 (7th Cir. 2002). This is "the standard method of measuring damages in price enhancement cases." *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc*., 424 F.3d 363, 374 (3d Cir. 2005). "The overcharge is typically calculated as the difference between the price actually charged and the price that would have prevailed in the

absence of the alleged anticompetitive conduct." SECTION OF ANTITRUST LAW, AMERICAN BAR ASS'N, PROVING ANTITRUST DAMAGES 199 (2d ed. 2010). "The estimated overcharge is then multiplied by the relevant quantity." *Id.*

Here, Plaintiffs are suing for, among other things, the difference in price between branded DDAVP that they paid for and the generic DDAVP they would have purchased had it not been delayed due to the alleged conduct. The dramatic price difference between brand and generic is reflected in data Plaintiffs obtained from IMS Health, a recognized source of pricing data in the pharmaceutical industry; it is also recognized in academic studies and scholarly literature that have observed the dramatic price-reducing benefits of generic entry. Several courts have approved of this general method to demonstrate class-wide impact. *See, e.g.*, *In re Neurontin*, Master File 02-1390, 2011 WL 286118, at *6 (D.N.J. Jan. 25, 2011); *In re Tricor*, 252 F.R.D. 213, 229 (D. Del. 2008); *Relafen*, 346 F. Supp. 2d at 343; *In re Wellbutrin SR Direct Purchaser Antitrust Litig.*, 04-CV-5525, 2008 WL 1946848, at *8 (E.D. Pa. May 2, 2008); *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365, 370 (D.D.C. 2007); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 308 (E.D. Mich. 2001).[10]

As this Court observed in *Buspirone*, "with respect to damages, Louisiana Wholesale seeks to establish the overcharges to the class and the antitrust injury using evidence that is applicable to the class as a whole, and this method of relying on generalized proof of class-wide injury has been employed by a number of other courts in almost identical contexts." *Buspirone*, 210 F.R.D. at 57. In short, essentially the same type of common evidence that would prove impact could be used to calculate damages. And even if it were not so, questions as to damages

---

[10] And even if a court were to find that "the issue of injury-in-fact presents individual questions, it does not necessarily follow that they predominate over common ones and that class action treatment is therefore unwarranted"). *Cordes*, 502 F.3d at 108 (reversing denial of class certification).

alone do not preclude certification. *See*, *e.g.*, *Cordes*, 502 F.3d at 109; *Central States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care L.L.C.*, 504 F.3d 229, 237 (2d Cir. 2007).

In sum, this action satisfies the predominance requirement of Rule 23(b)(3). *See, e.g., In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 218-34 (E.D. Pa. 2012); *Teva Pharms. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213, 227 n.32, 232 (D. Del. 2008). Defendants agree for purposes of settlement.

### b. A Class Action Is Superior To Other Methods Of Adjudication

Federal Rule 23(b)(3) provides that the Court may assess the superiority of the class action mechanism by weighing class members' interest in pursuing separate actions, the extent of any independent litigation already commenced by class members, the desirability of concentrating the litigation in this forum, and the "difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). As noted above, manageability concerns are assuaged in a settlement context because the case will never go to trial. *IPO III,* 260 F.R.D. at 88. Moreover, class treatment is superior to other means of resolving antitrust cases brought by purchasers or consumers. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. at 117 (court holding, in antitrust case, "[a] class action is the superior method of adjudicating these claims. Many of the class members' claims will be small relative to the high costs of maintaining an antitrust action…Streamlining the litigation in one forum will simplify the process and avoid inconsistency."); *Buspirone*, 210 F.R.D. at 58 (holding class certification for a purchaser class action was the superior method of adjudicating the claims at issue).

Indeed, the class action device is far superior to, and more manageable than, any other procedures available for the treatment of the factual and legal issues raised by Plaintiffs' claims.

*Id.* ("The numerous common issues of fact and law and the difficulty of numerous individual lawsuits indicates that a class action is superior to other methods for a fair and efficient adjudication of the controversy"). If Class members were required to proceed with separate actions, this litigation would be wholly unwieldy and entirely unmanageable. Thus, the superiority requirement of Rule 23(b)(3) is clearly met.

### B.     THE COURT SHOULD APPOINT CLASS COUNSEL

Plaintiffs request that the Court appoint the following attorneys and firms as Class Counsel in accordance with Rule 23(g): (1) Kevin B. Love and his firm Criden & Love, P.A., (2) Patrick E. Cafferty and his firm Cafferty Clobes Meriwether & Sprengel, LLP, (3) John Macoretta and his firm Spector Roseman Kodroff & Willis, P.C., and (4) Joseph H. Meltzer and his firm Kessler Topaz Meltzer & Check. Each has acted as interim Co-Lead Counsel since this case was filed, responsible for overseeing the litigation to date, including conducting the extensive settlement negotiations. These firms and their attorneys are recognized for their decades of expertise in representing plaintiffs in antitrust and other class and complex actions throughout the United States. Proposed Class Counsel have vigorously pursued this litigation on behalf of the proposed Class since this case was first filed. Proposed Class Counsel have filed and opposed motions, taken discovery, conducted the settlement negotiations, and have otherwise managed and prosecuted all aspects of this litigation. The Court should therefore appoint the proposed firms as Class Counsel.

### C.     THE PROPOSED SETTLEMENT EXCEEDS
### THE STANDARD FOR PRELIMINARY APPROVAL

Under Federal Rule of Procedure 23(e), a class action cannot be settled without the approval of the district court. *See* Fed. R. Civ. P. 23(e). Approval of a class action settlement involves a two-step process. *See In re Initial Public Offering Sec. Litig.*, 243 F.R.D. 79, 87

(S.D.N.Y. 2007) ("*In re IPO II*"). In step one, the court considers whether to approve the settlement preliminarily for purposes of communicating the terms of the settlement to the proposed class. *See id.* at 87 (citing MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 ("MANUAL"); *In re NASDAQ Market-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("Before sending notice of the settlement to the class, the court will usually approve the settlement preliminarily.").

In the second step, after notice to the class and provision of an opportunity for each class member to object to the proposed settlement or otherwise be heard, the court will determine whether the settlement is fair, reasonable and adequate and whether the settlement should be finally approved. *See In re IPO II*, 243 F.R.D. at 87 (citing MANUAL, at §§ 21.632 – 21.635); *In re NASDAQ II*, 176 F.R.D. at 102; *see also Wal-Mart Stores, Inc. v. Visa U.S.A, Inc.* 396 F.3d 96, 116 (2d Cir. 2005) ("A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion.") (internal quotation marks and citation omitted).

In determining whether to grant preliminary approval to a settlement, a court considers both the negotiating process leading up to the settlement and the settlement's substantive terms. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004). However, preliminary approval does not require the court to delve extensively into the adequacy of merits of the settlement. *See In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807, at **1-2 (E.D. Pa. May 11, 2004) (citing MANUAL, at § 21.632). Instead, the preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement based on written submissions and informal presentations from the settling parties. MANUAL § 21.632. Thus, "[w]here the proposed settlement appears to be the product of serious, informed,

non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re IPO II*, 243 F.R.D. at 87 (quoting *In re NASDAQ II*, 176 F.R.D. at 102). This Court should "review the negotiating process that produced the settlement to ensure: (1) that the settlement was the product of arm's-length negotiations; and (2) that class counsel possessed the experience and ability, and . . . engaged in the discovery, necessary to effective[ly] represent . . . the class's interests." *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 368-69 (S.D.N.Y. 2005) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)). In this respect, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *see also In re IPO III*, 260 F.R.D. at 87 (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116).

Because the proposed Settlement exceeds the requirements for preliminary approval as described below, this Court should grant such preliminary approval to the Settlement and direct that notice be sent to the Class.

### 1. The Proposed Settlement Is The Product Of Serious, Informed, Arm's-Length Negotiations

The proposed Settlement is the result of extensive arm's-length negotiations between highly experienced counsel. When counsel for the parties engage in diligent arm's-length negotiations, a settlement is generally entitled to a presumption of fairness. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998). As a result, Plaintiffs submit that the Settlement totaling $4.75 million reflects a fair assessment of the prospects of the Indirect Purchaser Class in this litigation.

## 2. The Proponents Of The Settlement Are Highly Experienced In Hatch-Waxman Antitrust Litigation

In approving class action settlements, courts have repeatedly and explicitly deferred to the judgment of experienced counsel who have engaged in arm's-length negotiations. *See, e.g., Wal-Mart Stores, Inc.*, 396 F.3d at 116 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (citation and internal quotation omitted); *In re IPO III*, 260 F.R.D. at 87 (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y 2008) ("a class action settlement enjoys a presumption of correctness where it is the product of arm's length negotiations conducted by experienced, capable counsel") (citation and internal quotation omitted). The presumption in favor of such settlements reflects the understanding that vigorous, skilled negotiation protects against collusion and advances the fairness interests of Rule 23(e).

Here, the Class is represented by lawyers who have extensive Hatch-Waxman antitrust class action experience. Class Counsel and other firms representing the Indirect Purchaser Class have operated on the forefront of Hatch-Waxman antitrust litigation for many years, and also have extensive experience with complex litigation generally. Indeed, over the past ten years, Class Counsel have represented certified classes of indirect purchasers in numerous antitrust cases relating to impeded generic competition. Class Counsel is thus well-versed in both the prosecution and settlement of this type of antitrust litigation.

### 3. There Was More Than Sufficient Discovery and Investigation For Class Counsel To Make An Informed Decision

Through discovery, Defendants and various non-parties produced thousands of pages of documents (including documents from the Barr Action), which Plaintiffs reviewed and analyzed, Thus, Plaintiffs had sufficient information to assess the claims.

### 4. The Proposed Settlement Is Within The Range Of Possible Approval

To preliminarily approve the Settlement Agreement, the Court must determine that the proposed settlement falls within the range of settlements that could possibly be worthy of final approval as fair, reasonable, and adequate. *In re NASDAQ II*, 176 F.R.D. at 102. The proposed Settlement totaling $4.75 million is substantial, both in absolute terms and in light of the circumstances of this litigation and thus fall within the range of approval. Under the circumstances here, the proposed Settlement is well within the range worthy of final approval.

Even following Plaintiffs' recent success in overcoming Defendants' motion to dismiss based on preemption, hurdles remain to continued prosecution of this case. Among other things, these obstacles include the sheer length of time that has elapsed since the underlying events giving rise to this action, some of which occurred in the 1980s. And, of course, Defendants are represented by very capable counsel, and, as demonstrated by their prior work, would no doubt leave no stone unturned in their efforts on behalf of Defendants.

In light of these factors, the proposed Settlement is fair, reasonable and adequate. Settlements constituting only a fraction of potential recovery have frequently been approved. *See*, *e.g.*, *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (settlement representing 1.62 percent of sales).

Furthermore, the proposed Settlement is highly favorable to the Class in that it enables Class members to receive the immediate benefit of $4.75 million while avoiding the considerable uncertainties and risks inherent in the multiple litigation hurdles remaining in this complex antitrust class action. Even assuming Plaintiffs succeeded in navigating and litigating this action through trial and, if applicable, subsequent appeals, such a course of action would likely require years of litigation before final resolution and receipt of any funds. Indeed, when compared to the significant and enduring risk of litigation to final resolution, the certain immediate receipt of the proceeds of the Settlement is more than sufficient to establish an initial presumption of a fair Settlement.

For the foregoing reasons, the Settlement Agreement is well within the range of possible final approval as a "fair, adequate, and reasonable" resolution of Plaintiffs' claims against Defendants. *See In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003).

### D. APPROVAL OF THE PROPOSED FORM AND MANNER OF NOTICE AND THE PROPOSED FINAL SETTLEMENT SCHEDULE LEADING UP TO THE FAIRNESS HEARING IS APPROPRIATE

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e)(1). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc.*, 396 F.3d at 113 (citations omitted). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* at 114 (internal quotation and

citation omitted). "Notice is adequate if it may be understood by the average class member." *Id.* (internal quotation and citation omitted). *See also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997).

Plaintiffs' proposed notice program, which provides clear and detailed instructions to Class members, meets the above standards. The form and manner of notice will satisfy both the notice requirements of Rule 23(e), and the due process requirements that must be met in order to bind each member of the Class.

For consumers, a publication notice (attached as Exhibit B to Love Declaration) shall be published in various magazines proposed by the Notice Administrator. A website, maintained by the Claims Administrator, shall include a Long-Form Notice (attached as Exhibit A to Love Declaration).[11] In addition to being able to read and print the Long-Form Notice from the website, a consumer may call the Claims Administrator to request that the Long-Form Notice be sent to them. Moreover, Class Counsel shall e-mail a Doctor Notice (attached as Exhibit E to Love Declaration) to all of the members of the American Academy of Pediatricians to advise them that some of their patients may be members of the Class.[12]

For Third Party Payors, the Post-Card Notice (attached as Exhibit D to Love Declaration) shall be sent to a list of third party payors culled from public sources. This type of notice has

---

[11] In addition to including the Long-Form Notice, the Settlement Website will also include for viewing and download: The Amended Consolidated Class Action Complaint, this Motion, the Settlement Agreement, the Allocation Plan, the Motion for Final Approval and Class Counsel's Request for Fees, Expenses and Incentive Awards, and other case-related documents.

[12] Individual notice is required where class members can be identified "through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Here, consumer class members cannot be identified through reasonable effort. Readily available mailing lists for prescription drug users do not exist because consumer class members' health information is protected against disclosure under HIPPA. Where, as here, class members cannot be identified through reasonable efforts, publication notice is a suitable alternative. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. at 252 ("best notice practicable under the circumstances was given by publishing the summary notice in newspapers and magazines which were likely to be ready by potential class members"); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d, at 536-37 (3d Cir. 2004) (rejecting objection that individual notice should have been given under the circumstances).

been successful in the past in similar types of litigation.  In addition, a Publication Notice (attached as Exhibit C to Love Declaration) will be published in *National Underwriter: Life and Health*, an industry magazine with wide circulation and readership.  Courts here and elsewhere have approved of these methods of notifying class members.  *See Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("It is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause."); *see, e.g., In re Sony Corp. SXRD Rear Projection Television Mrktg, Sales Prac. and Prods. Liab. Litig.*, No. 09-MD-2102, 2010 WL 1993817, at *5 (S.D.N.Y. May 19, 2010) (notice effected by mail and publication in widely-read periodical).[13]

Additionally, the content of the Long-Form Notice complies with Fed R. Civ. P. 23(c)(2)(B) and 23(e).  The Long-Form Notice fairly, clearly and concisely describes in plain easily understood language: (i) the nature of the action (§§ 1-3); (ii) the definition of the class certified (§§ 4-6); (iii) the Settlement benefits (§§ 7-8); (iv) that a class member may object to the Settlement Agreement and/or enter an appearance through an attorney if the member so desires (§§ 14-16); (v) that the Court will exclude from the class any member who requests exclusion (§ 12); (vi) the time and manner of requesting exclusion (§ 13); (vii) the binding effect of a class judgment on members of the class (§§ 10-11); (viii) the Fairness Hearing (§§ 20-22);

---

[13] To assist with the Notice and Claims Process, Plaintiffs seek appointment of A.B. Data, Ltd. ("A.B. Data") as the Claims Administrator to oversee the dissemination of notice to the Class, and ultimately, the administration of the Settlement.  A.B. Data has extensive experience in class action claims administration, including in antitrust litigation.  Likewise, Plaintiffs seek to have Kinsella Media, LLC appointed as Notice Administrator.  Finally, Plaintiffs seek to have Gibraltar Private Bank & Trust Co. appointed as Escrow Agent. More information about A.B. Data, Kinsella and Gibraltar Bank are available at their respective websites: www.abdataclassaction.com, www.kinsellamedia.com, and www.gibraltarprivate.com.

(ix) counsel's request for attorneys' fees and reimbursement of expenses, and proposed incentive awards for each of the Class representatives (§ 18); and (x) how to get more information (§ 23).

Accordingly, the proposed Notice adequately apprises the prospective members of the Class as to the terms of the proposed Settlement and sufficiently outlines the options available to them in connection with the proceedings. *Wal-Mart Stores, Inc.*, 396 F.3d at 114. Importantly, the Notice can "be understood by the average class member." *See id.*; *see also Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (The notice "must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member.") (citation omitted); *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982) ("It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to specifics may be obtained.").

As set forth in the proposed Preliminary Approval Order (the "Order"), Plaintiffs propose the following schedule for completing the Settlement approval process:[14]

- For Consumers, Publication Notice shall begin on or around May 14, 2013 and shall continue with the final publication by July 1, 2013;

- For Consumers, the Long-Form Notice shall be put up on the website maintained by the Claims Administrator by May 1, 2013;

- For Consumers, on-line media shall be disseminated between June 1, 2013 and July 31, 2013;

---

[14] The dates in the proposed schedule below assume that the Preliminary Approval Order will be signed by April 5, 2013. If not, then Class Counsel will need to petition the Court for new deadlines to be used in the approval process.

- For Consumers, an E-Mail Blast shall be disseminated to members of the American Academy of Pediatricians by July 31, 2013;

- For Third Party Payors, a Postcard Notice shall be mailed to all Third Party Payors, whose addresses can be reasonably obtained, by May 1, 2013;

- For Third Party Payors, the Long-Form Notice shall be put up on the website maintained by the Claims Administrator by May 1, 2013;

- For Third Party Payors, Publication Notice shall be published in National Underwriter: Life and Health on or around May 1, 2013;

- By September 2, 2013 (within 60 days from the date the last Publication Notice is published (July 1, 2013)): any potential member of the proposed Class must timely mail a Request for Exclusion ("opt out"). Any potential member of the Class that does not properly and timely mail a Request for Exclusion as set forth in the Notice shall be included in the Class and shall be bound by all the terms and provisions of the Settlement, whether or not such potential member of the Class shall have objected to the Settlement and whether or not such potential member of the Class makes a claim upon or participates in the Settlement.

- By October 24, 2013 (or approximately 10 days after Defendants must determine whether to terminate the Settlement), Plaintiffs will submit its Motion For Final Approval, which will include counsel's request for attorneys' fees, expenses, and awards to the Class Representatives, as well as a Plan of Allocation (which will provide for allocating the net settlement proceeds to Class members).

- By November 22, 2013 (or approximately 30 days after Plaintiffs' deadline to file its Motion for Final Approval), any potential member of the proposed Class must

timely file and serve any objection as set forth in the Notice, and any objection

that does not comply with the Notice requirements should not be entertained by

the Court;

- By December 6, 2013, Plaintiffs shall file and serve its responses to any filed objections;

- Between December 9, 2013 and December 20, 2013, Plaintiffs request that the Court hold the Fairness Hearing to determine the fairness, reasonableness and adequacy of the proposed Settlement; whether the Settlement should be finally approved; whether Indirect Purchaser Class Counsel's application for an award of attorney's fees and expenses, and an incentive award for Named Plaintiffs (as defined in the Settlement Agreement) should be approved; whether the Plan of Allocation should be approved; and whether a final judgment should be entered; and

- By January 15, 2014, Class members must submit their claim forms to the Claims Administrator.

## IV.    CONCLUSION

For the foregoing reasons, the Court should enter the proposed Preliminary Approval

Order, which would certify the class for settlement purposes, appoint the Named Plaintiffs as

representatives of the Class, designate Criden & Love, P.A., Cafferty Clobes Meriwether &

Sprengel, LLP, Spector Roseman Kodroff & Willis, P.C., and Kessler Topaz Meltzer & Check as

Co-Lead Class Counsel, preliminarily approve the proposed Settlement, approve the proposed

form and manner of Notice, approve the appointment of the Class Administrators, and set a date

for a Fairness Hearing.

Dated: March 5, 2013

Respectfully submitted,

s/ Kevin B. Love
Kevin B. Love
(Admitted *Pro Hac Vice*)
**CRIDEN & LOVE, P.A.**
7301 S.W. 57th Court, Suite 515
South Miami, FL 33143
(305) 357-9000

John A. Macoretta
**SPECTOR ROSEMAN KODROFF &
WILLIS, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 496-0300

Joseph H. Meltzer
Terence S. Ziegler
**KESSLER TOPAZ MELTZER &
CHECK  LLP**
280 King of Prussia Rd.
Radnor, PA 19087
(610) 667-7706

Patrick E. Cafferty
**CAFFERTY CLOBES MERIWETHER
& SPENGEL LLP**
101 North Main Street, Suite 565
Ann Arbor, MI 48104
(734) 769-2144

**Co-Lead Counsel
For Indirect Purchaser Plaintiffs**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed via CM/ ECF, and that a true and correct copy of the foregoing was furnished, on this 5th day of March 2013 via U.S. Mail and E-Mail to: Barbara Wootton, Esquire, and Douglas L. Wald, Arnold & Porter LLP, 555 Twelfth Street, NW, Washington, DC 20004-1206; and Rosanna K. McCalips, Esquire, Jones Day, 51 Louisiana Avenue, N.W., Washington, DC 20001-2113.

<u>s/ Kevin B. Love</u>
Kevin Love